Wilfredo FELICIANO–RODRIGUEZ, Plaintiff

v.

UNITED STATES of America, Defendant.

No. Civil 11–1655CCC.

United States District Court, D. Puerto Rico.

Signed May 29, 2015.

Edgar L. Sanchez–Mercado, ESM Law Office, San Juan, PR, for Plaintiff.

Desiree Laborde–Sanfiorenzo, Nelson J. Perez–Sosa, United States Attorney's Office, San Juan, PR, for Defendant.

## JUDGMENT

CARMEN CONSUELO CEREZO, District Judge.

Having considered the Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (**D.E. 1**) and the Amended Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (**D.E. 2**) filed by petitioner Wilfredo Feliciano–Rodríguez, the United States' Response in Op-

position (D.E. 6), petitioner's Reply to the Response (D.E. 8), and the Report and Recommendation issued by U.S. Magistrate–Judge Justo Arenas (D.E. 39), to which no objections have been filed, said Report and Recommendation is APPROVED and ADOPTED and petitioner's Motions Under 28 U.S.C. § 2255 are DENIED. Accordingly, it is ORDERED and ADJUDGED that judgment be and is hereby entered DISMISSING this action.

No certificate of appealability shall be issued, as petitioner has not made a substantial showing of the denial of a constitutional right within the meaning of Title 28 U.S.C. § 2253(c)(2). *Miller–El v. Cockrell,* 537 U.S. 322, 336–38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

SO ORDERED AND ADJUDGED.

### *MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

JUSTO ARENAS, United States Magistrate Judge.

## I. PROCEDURAL BACKGROUND

Petitioner, a convicted drug trafficker, is seeking collateral review of his life sentences based upon ineffective assistance of his primary retained attorney Lorenzo Palomares Starbuck. He also attacks the performance of his retained appellate attorney Linda Backiel and his court-appointed attorney Bruce McGiverin. An evidentiary hearing was held on one of the many issues he has raised for collateral review. In this review he has sought the assistance of a jailhouse lawyer and has more recently been ably assisted by court-appointed counsel Edgar L. Sanchez–Mercado. See *Owens v. United States,* 483 F.3d 48, 60–61 (1st Cir.2007). With this nutshell as preface, I discuss the background of the case before entering into the two dozen issues raised.

On March 11, 2004, a grand jury sitting in Puerto Rico returned a six-count superceding indictment charging petitioner Wilfredo Feliciano–Rodriguez and eleven other defendants, with narcotic drug and weapons violations. Petitioner was charged in the first count in that, from on about 1998 up to and including the date of the indictment, in the District of Puerto Rico and elsewhere, and within the jurisdiction of this court, petitioner and the co-defendants, together and with others, known and unknown to the Grand Jury, did knowingly, intentionally and unlawfully conspire, confederate, and agree together and with each other, and with diverse other persons, to commit an offense against the United States, that is, to possess with intent to distribute and distribute narcotic controlled substances, to wit: five kilograms or more of cocaine, and/or fifty grams or more of cocaine base ("crack"), both Schedule II Narcotic Controlled Substances, and/or in excess of one kilogram or more of a mixture or substance containing a detectable amount of heroin, and/or 1000 kilograms or more of marijuana, both Schedule I Narcotic Controlled Substances, inside or within 1,000 feet of real property comprising a housing facility owned by a public housing authority, that is, the Nuestra Señora de Covadonga Public Housing Project, Trujillo Alto, Puerto Rico, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A), 846 and 860. All in violation of 21 U.S.C. § 846. (Criminal 04–052, Docket No. 60). Count Two charged petitioner and three other defendants with knowingly, intentionally and unlawfully conspiring, combining, confederating and agreeing together and with each other and with diverse other persons, to commit an offense against the United States, that is, to knowingly, willfully, intentionally and unlawfully possess,

use, brandish, or carry firearms, as that term is defined in section 921(a)(3), of Title 18, United States Code, in furtherance of, or during and in relation to a drug trafficking crime as that term is defined in Section 924(c)(2), of Title 18, United States Code, to wit: conspiracy to possess with intent to distribute and distribute narcotic controlled substances, an offense for which they can be prosecuted in a court of the United States as a violation of Title 21, United States Code, Section 946 as charged in Count One, all in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(*o*). (*Id.* at 10). Counts Four and Six charge petitioner with knowingly, willfully, intentionally and unlawfully possessing, using, brandishing, or carrying a firearm (on two different dates), as that term is defined in section 921(a)(3), of Title 18, United States Code, in furtherance of, or during and in relation to a drug trafficking crime as that term is defined in Section 924(c)(2), of Title 18, United States Code, to wit: conspiracy to possess with intent to distribute and distribute narcotic controlled substances, an offense for which he can be prosecuted in a court of the United States as a violation of Title 21, United States Code, Section 846 as charged in Count One, all in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii). Petitioner is described as a leader and organizer who also supervised the drug points in the housing project, overseeing the managers, runners, enforcers and sellers. During the years the criminal enterprise existed, he played different roles until he reached the top position of owner of the drug point.

Petitioner was arrested on June 1, 2004 and arraigned on June 7, 2004. (Criminal No. 04–052, Docket No. 104). Court-appointed counsel Bruce McGiverin represented petitioner at the time. During the following months, several codefendants entered guilty pleas based upon agreements with the government and eventually all entered guilty pleas in this case except for one who died after indictment. In a companion case, petitioner is mentioned as an unindicted co-conspirator.[1] Attorney McGiverin represented petitioner for seven months. On January 27, 2005, counsel McGiverin moved to withdraw representation and retained counsel Lorenzo J. Palomares–Starbuck entered a notice of appearance on behalf of petitioner. (Criminal No. 04–052, Docket Nos. 265, 269). After a very active motion practice period, petitioner alone proceeded to trial a year later[2]. *United States v. Rodriguez*, 525 F.3d at 93.

Trial began on January 17, 2006 and ended with a guilty verdict on February 15, 2006. (Criminal No. 04–052, Docket No. 430). Petitioner was sentence on November 6, 2006 to life imprisonment on Counts One and Two, to be served concurrently, followed by a term of seven years as to Count Four and twenty-five years as to Count Six, to be served consecutively to each other and to the sentences for Counts One and Two. (Criminal No. 04–052, Docket No. 463). A notice of appeal was filed. On appeal, petitioner argued that the cumulative effect of errors deprived him of a fair trial, and that the evidence varied impermissibly from the information in the indictment. The sentence was also challenged as unreasonable, and further stressed errors as to drug quantity calculations, and the brandishing of a firearm, that a sentence above the statutory maximum was imposed, and that erroneous consecutive sentence were imposed for the convictions under 18 U.S.C. § 924(c). Pe-

---

1. Criminal No. 04–050(JAG).

2. In the companion case, Criminal No. 04–050, before a different judge, three of twelve defendants proceeded to trial. All twelve were adjudicated guilty.

titioner was then represented by retained counsel Linda Backiel.

In a lengthy discussion, petitioner's convictions as to Counts One and Two were affirmed on May 13, 2008, but the sentence as to Count Two was vacated with instructions for the district court to sentence petitioner to a term of no more than twenty years. (Criminal No. 04–052, Docket No. 512) (Mandate). The conviction and sentence as to Count Four was vacated and the conviction as to Count Six was affirmed with instructions to sentence petitioner to the statutory minimum term of five years, to run consecutively to the sentences imposed on Counts One and Two. *United States v. Rodriguez,* 525 F.3d 85, 112 (1st Cir.2008).

On remand, and prior to re-sentencing, petitioner sought the appointment of counsel, specifically attorney Linda Backiel. (Criminal No. 04–052, Docket No. 527). Therefore counsel Palomares–Starbuck was relieved from legal representation and counsel Linda Backiel was appointed to represent petitioner on November 6, 2008. (Criminal No. 04–052, Docket No. 531).

Petitioner was re-sentenced on December 9, 2008. (Criminal 04–052, Docket No. 536). An appeal followed. On March 5, 2010, the court of appeals affirmed the sentences in a detailed judgment. *United States v. Feliciano–Rodriguez,* No. 09–1124 (1st Cir. March 5, 2010). (Criminal No. 04–052, Docket No. 567).

The court noted that it was not plain error for the district court not to group Counts One and Two pursuant to U.S.S.G. § 3D1.2(c). In any event, no substantive rights were affected since petitioner's total sentence was not thus lengthened.

The argument that the 20-year sentence on Count Two was substantively unreasonable was also rejected since it was the only sentence possible under the guideline range, and the district court adequately explained the reasons for the same.

## II. COLLATERAL REVIEW

This matter is before the court on timely 43–page motion with accompanying 21–page memorandum of law to vacate, set aside or remand sentence filed by petitioner Wilfredo Feliciano–Rodriguez on July 18, 2011, amending a motion filed a week previously. (Docket Nos. 1, 2). Also before the court is petitioner's supplemental motion filed on December 18, 2012, and another supplemental motion filed on October 2, 2013. (Docket Nos. 10, 11).

An evidentiary hearing was held on February 13, 2015 in relation to the facts surrounding petitioner's rejection of a plea. A final memorandum in support of the Section 2255 motion was filed on April 1, 2015. (Docket No. 38). All previous filings of substance were pro se, and very apparently with the aid of a jailhouse lawyer.

Petitioner presses before the court a comprehensive attack on the performance of his trial attorney Lorenzo Palomares–Starbuck, complaining of the short notice petitioner received in order to accept a 15½ year plea offer, requiring him to make a split-second decision on a major life decision, and also complaining of the advice of counsel to go to trial based upon a weak case for the prosecution. (Docket No. 2 at 3). Petitioner also complains that counsel's unavailability contributed to his poor performance in terms of advising him on whether to plea guilty or go to trial and that if he would have had a few more days to consider the government's offer, he would have accepted it and the result would have been different. (Docket No. 2 at 4). The prejudice is obvious due to the difference between a life sentence and 15½ years. He notes that counsel McGiverin told him that he faced 40 to 47 years if

found guilty by the jury, and that if he knew he faced a life sentence, he definitely would have accepted the fifteen and ½ years. (Docket No. 2 at 4). Petitioner complains that before filing a motion for change of plea, counsel Palomares Starbuck did not confer with him, and that during the 55–day period between the filing of the motion for change of plea and the hearing date, counsel did not confer with him. (Docket No. 2 at 5). Petitioner also complains of an announced alibi defense that never appeared at trial, and also complains that an identification expert was not presented in relation to a video that was presented in evidence to show that he was not in the video.

Petitioner argues generally that counsel failed to diligently prepare a defense (quoting instructions by the trial judge to counsel), as reflected in his not translating documents into the English language, in failing to object when the trial judge spoke to a juror in camera, in failing to argue at closing argument on the identification defense which he had noted in opening statement, in failing to review all discoverable evidence, in failing to "subject the prosecution to meaningful adversarial testing", failing to object to the court's instruction on controlled substances, failing to object to other jury instructions, failing to object to an aerial photograph, or to the testimony of a law enforcement agent as to the area of drug trafficking. (Docket No. 2 at 12). Petitioner also attacks counsel's failure to object to overview testimony, and to attack a biased grand jury and prosecutorial misconduct. Other details are raised such as one related to a juror, to a jailhouse photo, to the court's not allowing petitioner to bring a Bible into the courtroom, which arguably reflects the court's bias toward him and lack of impartiality. Petitioner also states that he saw a prosecutor and witnesses talking with a female juror in the hallway of the courtroom, as

well as during closing argument, and that his attorney did not bring this to the court's attention. Petitioner charges that counsel failed to move for mistrial based upon improper conduct by the prosecution and goes through details of the testimony which was poorly handled by counsel.

Appellate counsel is charged with failing to raise numerous issues such as improper and prejudicial jury instructions, failing to raise the determination of the amount of drugs based on facts other than those determined by a jury, and failing to preserve prior objections.

Petitioner also asks for discovery regarding the plea issue, visits to MDC by counsel, and record of phone calls between client and counsel.

Petitioner's primary memorandum of law contains the legal bases for his arguments, beginning with the leading case of *Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The United States filed a 25–page response in opposition to petitioner's motion on October 26, 2011. (Docket No. 6). It argues that the evidentiary claims were raised on appeal, that the court of appeals has considered each of the trial court's evidentiary rulings, that some issues lack merit, and that others were not raised on appeal and therefore are foreclosed on collateral review. (Docket No. 6 at 5). The United States also stresses the lack of error in sentencing related to drug quantity determinations. (Docket No. 6 at 6). The government addresses the details of petitioner's argument related to alibi, identification, aerial photograph, in camera communication with juror, jury instructions, irregular and false grand jury testimony, juror bias (based upon a juror who knew petitioner), and unfairly prejudicial evidence. The prosecution notes the lack

of error in the court's excluding the Bible from the courtroom under the circumstances.

The translation issue is also addressed and rebutted as well as the plea offer matter, noting the contradictory information provided in supporting the lack of merit to the argument. The plea offer was made and was rejected. (Docket No. 6 at 22). Finally, the government demurs from the cumulative error argument and also notes that the burden for showing entitlement to an evidentiary hearing has not been met.

On December 5, 2011, petitioner filed a 17-page reply to the response. (Docket No. 8). Petitioner notes that if the court agrees with the plea offer issue, the rest of his argument is moot, and stresses that there is no counter-affidavit presented by the government in relation to the issue of the timely conveyance of the plea offer. He stresses that he should have had time to confer with his family on such a life-altering decision, but that he was rushed into the decision. He also complains that the counteroffer of 12 ½ years was not conveyed to the government. Admitting that the plea offer was rejected, he stresses the lack of time to consider it, the blame for which is squarely placed on the shoulders of his attorney. The rest of the reply is mostly repetitious, at times expanding on previous argument.

On December 18, 2012, petitioner moved to supplement his petition under Fed. R.Civ.P. 15(c), premised on supplementary authority in relation to the plea offer issue, based upon *Lafler v. Cooper*, 566 U.S. ——, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012). The government did not respond to this motion.

Finally, on October 2, 2013, petitioner again moved to supplement his petition under Fed.R.Civ.P. 15(c), this time praying for relief under *Alleyne v. United States*, 570 U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). The government did not respond to this motion. This is simply an observation and not a criticism.

■ I will be addressing *ad seriatim* the issues raised by petitioner and hope to avoid any confusion that may result since his numerous grounds for relief are titled adequately but not numbered. Petitioner reminds the court in his first supplemental brief that it should review his pleading liberally under the pleading standard of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and also because petitioner is a non-English speaking pro se litigant. Of course, because petitioner originally appeared pro se, regardless of whether he is being assisted by a jailhouse lawyer, his pro se pleadings are considered more liberally, however inartfully pleaded, than those penned and filed by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Paez–Fontana v. U.S.*, 31 F.Supp.3d 328, 331 (D.P.R.2014); *Campuzano v. United States*, 976 F.Supp.2d 89, 97 (D.P.R.2013); *Proverb v. O'Mara*, 2009 WL 368617 (D.N.H. Feb. 13, 2009) at *1. Notwithstanding such license, petitioner's previous pro se status does not excuse him from complying with both procedural and substantive law. *See Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997); *Boudreau v. Englander*, 2009 WL 2602361 at *1 (D.N.H. Aug. 24, 2009). An evidentiary hearing was scheduled and held. Counsel Edgar Sanchez–Mercado was previously appointed to represent petitioner at the hearing. The generous standard does not apply to counsel's submission for obvious reasons.

■ Having considered the argument of petitioner and the United States, I find that the performance of defense counsel Lorenzo Palomares Starbuck fell below an

objective standard of reasonableness in relation to the amount of time that passed between communications with petitioner but that petitioner was not prejudiced in his decision-making process by that passage of time. In relation to the other grounds for relief, I do not find that counsel Palomares Starbuck rendered inadequate performance in a Sixth Amendment sense, particularly given the nature of the remedy sought. I further find that appellate counsel Linda Backiel did not render ineffective assistance on appeal. I make a similar finding as to then defense counsel Bruce McGiverin. I explain.

■ The nature of federal habeas corpus cannot be overemphasized. It is, an extraordinary remedy in light of society's legitimate interest in the finality of judgments. *United States v. Ashton*, 961 F.Supp.2d 7, 11 (D.D.C.2013). It is a rarely applied remedy in its extraordinary character. It is neither a second chance at appeal nor is it a substitute for direct appeal; "a defendant is therefore required to show 'a good deal more than would be sufficient on a direct appeal' to gain collateral relief". *Id.*, citing *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C.Cir. 1992); *United States v. Frady*, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see Fernandez–Malave v. United States*, 502 F.Supp.2d 234, 238 (D.P.R. 2007). Notwithstanding the number and depth of issues presented, and notwithstanding one of my conclusions in favor of petitioner's position, petitioner has failed to show that he is entitled to extraordinary relief.

## III. DISCUSSION

Under section 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack....

28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426–27, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *David v. United States*, 134 F.3d 470, 474 (1st Cir.1998). Petitioner's claims fall under this last clause.

■ It is well settled that the Sixth Amendment right to counsel guarantees effective counsel. *See Strickland v. Washington*, 466 U.S. at 686–87, 104 S.Ct. 2052; *United States v. Ortiz*, 146 F.3d 25, 27 (1st Cir.1998). Nevertheless, petitioner bears a "very heavy burden" in his attempt to have his sentence vacated premised on an ineffective assistance of counsel claim. *See Turner v. United States*, 699 F.3d 578, 584 (1st Cir.2012); *Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir.1996); *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993). This is particularly true in this circuit where a lawyer's performance is deficient under *Strickland* "... only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *United States v. Rodriguez*, 675 F.3d 48, 56 (1st Cir.2012), quoting *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir.2010), which in turn quotes *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir.2006).

■ The United States Supreme Court has developed a two-pronged test to determine whether a criminal defendant was denied his constitutionally guaranteed effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. 2052; *also see Chaidez v. United States*, —— U.S. ——, 133 S.Ct. 1103, 1107–08, 185 L.Ed.2d 149 (2013). Pursuant to the two-part test, petitioner must

first establish that his counsel in the criminal proceedings was deficient in that the quality of legal representation fell below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. 2052; *Ortiz–Graulau v. United States,* 756 F.3d 12, 17 (1st Cir. 2014); *Rosenthal v. O'Brien,* 713 F.3d 676, 685 (1st Cir.2013). In order to satisfy the first-prong of the aforementioned test, petitioner "must show that 'in light of all the circumstances, the identified acts or omissions [allegedly made by his trial attorneys and/or appellate counsel] were outside the wide range of professionally competent assistance.'" *Tejeda v. Dubois,* 142 F.3d 18, 22 (1st Cir.1998) (citing *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. 2052). Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States,* 94 F.3d 20, 23 (1st Cir.1996) (citing *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052). Finally, a court must review counsel's actions deferentially, and should make every effort "to eliminate the distorting effects of hindsight." *Argencourt v. United States,* 78 F.3d at 16 (citing, *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052); *see also Burger v. Kemp,* 483 U.S. 776, 789, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *Ramirez–Burgos v. U.S.,* 990 F.Supp.2d 108, 122–23 (D.P.R. 2013).

■ The second prong of the test, "[t]he 'prejudice' element of an ineffective assistance [of counsel] claim[,] also presents a high hurdle. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Argencourt v. United States,* 78 F.3d at 16 (citing *Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. 2052). Thus, petitioner must affirmatively "prove that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Knight v. United States,* 37 F.3d 769, 774 (1st Cir.1994) (citing *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052). That is, if petitioner succeeds in showing deficiencies in his legal representation, then he must conclusively establish that said deficiencies operated a real prejudice against him in the criminal proceedings. *See id.* at 694, 104 S.Ct. 2052.

■ "In all criminal prosecutions, the accused shall enjoy the right to ... the Assistance of Counsel for his defence." U.S. Const. amend. 6. "[T]he 'Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" *Sleeper v. Spencer,* 510 F.3d 32, 38 (1st Cir.2007) (quoting *Yarborough v. Gentry,* 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)). As to the two part test for constitutionally ineffective assistance of counsel, petitioner bears the burden of proof for both elements of the test. *See Cirilo–Muñoz v. United States,* 404 F.3d 527, 530 (1st Cir. 2005) (citing *Scarpa v. Dubois,* 38 F.3d 1, 8–9 (1st Cir.1994)). There is no doubt that *Strickland v. Washington, supra,* also applies to representation outside of the trial setting, which would include sentence and appeal. *See Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Bonneau v. United States,* 961 F.2d 17, 20–22 (1st Cir.1992); *United States v. Tajeddini,* 945 F.2d 458, 468–69 (1st Cir. 1991), *abrogated on other grounds by Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). *A fortiori,* the right to effective assistance of counsel applies to the plea bargaining process. *See Missouri v. Frye,* 566 U.S. ——, 132 S.Ct. 1399, 1406–1407, 182 L.Ed.2d 379 (2012). Indeed, the "Sixth Amendment guarantees a defendant the right to have

counsel present at all 'critical' stages of the criminal proceedings." *Id.* at 1405, quoting *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), which in turn quotes *United States v. Wade*, 388 U.S. 218, 227–228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

■ Assuming that counsels' representation fell below an objective standard of reasonableness, petitioner would still have to prove that the representation resulted in prejudice to his case. *See Owens v. United States*, 483 F.3d at 63 (quoting *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. 2052). For our purposes, it makes no difference in which order the test of *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052 is applied. *See Turner v. United States*, 699 F.3d at 584.

■ Within a habeas corpus case the decision to order an evidentiary hearing is left up to the discretion of the court. A court may deny an evidentiary hearing when "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations 'need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'' " *David v. United States*, 134 F.3d at 477 (quoting *United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir.1993)); *Shraiar v. United States*, 736 F.2d 817, 818 (1st Cir. 1984). The United States originally opposed the holding of an evidentiary hearing but has not pressed the matter.

■ Finally, collateral attack on nonconstitutional and nonjurisdictional "claims are properly brought under section 2255 only if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary de-

mands of fair procedure.' " *Knight v. United States*, 37 F.3d at 772, quoting *Hill v. United States*, 368 U.S. at 428, 82 S.Ct. 468.

## IV. ISSUES

With bedrock principles as background, I consider the issues raised by petitioner.

### FIRST GROUND:

### PLEA REJECTION

Petition complains that counsel's failure to timely consult with him regarding an offered plea, and the prediction of acquittal due to a weak case led petitioner to reject the offer and proceed to trial. Petitioner stresses that he would have taken the offer if he would have had time to study it, but because of counsel's failure to timely communicate with him, in part due to counsel's traveling, he rendered ineffective assistance. He also stresses that if he had known he was exposed to a life sentence if convicted after trial, he would have taken the offer.

The matter of the plea offer and its rejection were set for evidentiary hearing which was held on February 13, 2015. Petitioner was represented by attorney Edgar L. Sanchez–Mercado, the United States by Assistant United States Attorney Desiree Laborde–Sanfiorenzo. Eight members of petitioner's family were also present at the hearing.

### A. EVIDENTIARY HEARING

Petitioner testified that he is 33 years old and has been residing at the Metropolitan Detention Facility in Guaynabo for the last two months. Previously he lived at Coleman Federal Penitentiary for 8 years. Before that period, he had been at MDC for 2 1/2 years. After he was sentenced, he went to Coleman where he has been serving two life sentences, and additional sen-

tences of 7 and 25 years. The charges were both for drugs and weapons.

Petitioner's attorney was Lorenzo Palomares Starbuck during the trial period up until the date of sentence, and also before that period while they were looking into how to prepare for trial. The last day he saw him was on the date of the sentence, November 6, 2006. Before that, petitioner had met with him five or six times. The first visit was about getting started on the payment. Two or three other times that he visited with petitioner in prison was to look at videos and other evidence and get ready for trial. And that was it from the lawyer he had contracted to represent him.

Petitioner noted that he had received help in preparing his pleadings from a fellow inmate, Jimmy, a Mexican inmate at Coleman. Petitioner explained his participation in preparing the motions, including the direct appeal to Boston. He also explained that he received help for the 2255 from the Mexican and he would translate since petitioner does not know English[3]. He also knew about law and was given the information he needed from petitioner to put in the appeal. Jimmy asked petitioner about the errors petitioner saw since the 2255 motion involved those failures or errors that petitioner had seen.

The appeal in Boston was prepared by attorney Linda Backiel, court appointed counsel.[4] The result was that Count One of the indictment was taken away, and reduced to 20 years. In Count 3, which resulted in 25 years, he was found not guilty, and the seven years for the weap-

ons charge were reduced to 5 years. The rest of the conviction was affirmed.

Referring to the 2255 motion, Docket No. 1, petitioner noted that it was prepared by Jimmy and him. Referring to page 3 of the plea agreement, petitioner testified that Jimmy asked him what he saw as a deficiency of the attorney's representation. Petitioner explained that in the early morning hours of the day he was to enter a guilty plea (unknown to him), he was awakened because he had court that day. The guard said that he was on a list and had to go to court. He did not know he had court that day since his lawyer did not tell him there was court. It was a surprise.

At the court, the process at the cellblock was normal but suddenly the lawyer comes and wants to talk to him. Petitioner asked him what was happening. The attorney said that he had a plea agreement for him to sign. Petitioner's reaction was "Wait a second. We haven't talked about a plea". He was surprised. The lawyer never told him about a plea and they were getting ready for trial, but now the lawyer surprised him with this agreement. He said this is routine. The lawyer told him that if he did not want to sign the plea, not to worry because he would be going before a female United States Magistrate Judge and he could tell her he did not want to sign. That is what he said and that is what petitioner did once in court. (Criminal No. 04–052, Docket No. 376, dated November 29, 2005).[5] The lawyer ex-

---

3. During the evidentiary hearing, petitioner reflected having at least rudimentary knowledge of English in answering some questions monosyllabically without the use of an interpreter.

4. Attorney Backiel was retained counsel for the first appeal and court-appointed for the second appeal.

5. A review of the tape recording of the change of plea hearing reveals that it lasted less than two minutes and petitioner's voice is not heard. Indeed, defense counsel could not have been briefer in withdrawing the motion and telling the presiding judicial officer that the decision was contrary to his advice. There was no direct questioning of petitioner by the judicial officer.

plained to him that the content of the plea agreement was for 15 1/2 years. Petitioner was told this through a window. Petitioner explained to the lawyer that he had no time to analyze it, and that the lawyer hadn't come to see him. He wanted time to talk to his family to see what decision to make. He says there was no time, and that either sign then and there or they would go to court, meaning to trial. Petitioner did not read that plea agreement. He saw the paper (plea agreement) in court and it was in English. Mr. Palomares Starbuck just told him of the government's offer of 15 years. He would be pleading guilty to conspiracy and weapons charges. They did not talk about the sentencing guidelines nor about the minimum and maximum sentences. Mr. Palomares Starbuck said that one of sentences could be more that 10 years (the drug charge) and the other one, the weapons charge, upward of 25 years. There was also another weapons charge. So there was a total of 40–45 years for the other weapon included that he would be facing. He never mentioned a life sentence. Petitioner had also discussed a plea agreement at MDC with attorney Bruce McGiverin before attorney Palomares Starbuck came into the case.

Once in court before the U.S. Magistrate Judge with attorney Palomares Starbuck, they did not spend any time talking about the plea agreement on the table. It was all fast. They hardly spoke. The United States Magistrate Judge [6] asked him and petitioner said to her that he was rejecting the plea. He did not have enough time to do anything else. So the lawyer said to him to be ready, that the trial would start soon.

Based on what he had discussed with the attorney through the glass (partition at the U.S. Marshal's holding area), and later, the attorney said that it was routine "and that kind of thing". It was (take the plea offer), sign right then and there, now, or go to trial. Petitioner said that they were getting ready for trial. "Then it's trial." "Let's go over there and get this done and over with".

Petitioner later talked to the attorney about what had happened at that hearing. He was not specific about what was being offered. Petitioner asked why he hadn't talked to him, and why he wasn't specific about the offer before, and why he was not getting the same offer as a co-defendant who had the same charges petitioner was facing. They never discussed filing any motion. He never discussed with the attorney to file a motion for change of plea. Petitioner did not authorize him to file a motion for change of plea at that time. The lawyer said that the prosecutor had given him the plea agreement at that time. The whole time the attorney was telling petitioner that they had a good case. Petitioner had never told the attorney what his previous attorney, Bruce McGiverin, had told him. But he explained that attorney McGiverin once told petitioner that if found guilty, he could receive a sentence of 40 to 45 years. Petitioner told attorney McGiverin about the 12 1/2 year offer to a codefendant. Attorney McGiverin did not know of any negotiations or of 12 1/2 years that were offered to another defendant.

After the hearing, they just got ready to go to trial. It was maybe three weeks or a month before trial started. They never again talked about what had happened in the change of plea hearing. Petitioner asked him why the prosecutor's office was not bringing the same offer of 12 1/2 for the co-defendant.[7] This was asked before

---

**6.** Honorable Camille Velez–Rive.

**7.** In an amended sworn statement, petitioner noted that counsel told him in relation to why

and after the change of plea hearing. They talked about this three or four time. Petitioner never got a reply in relation to any plea negotiations.

The day of the trial, there were no offers on the table. The lawyer said no. Petitioner repeated the 12 1/2 years. The attorney told him he had to cooperate, or stick with the 15 1/2 years, or go to trial. On the day of trial they did not discuss the possibility of pleading out. The lawyer never said anything to petitioner. Petitioner testified that he always wanted to plead guilty. But the lawyer at the change of plea hearing said it was now or trial. Attorney Palomares Starbuck had said they had a good case, but gave petitioner no hope to have time to discuss the offer with his family. So petitioner decided, OK, let's go to trial.

The two only argued on the date of the change of plea hearing because he caught petitioner by surprise. Petitioner never received any plea related correspondence in the mail.

Expressing his opinion about attorney Palomares Starbuck, petitioner noted that he never told petitioner about any plea negotiation, and always prepared to go to trial, always talking about going to trial, because they had a good case based on the evidence. Both of them looked at the videos to be used in evidence by the government. Petitioner testified that he only comes out in one part of the video receiving a weapon. However, on the video, attorney Palomares Starbuck said that it was not petitioner, that it does not look like petitioner. Petitioner looked at the video and said that it did not look like him at all but the truth is that the person in

the video was petitioner. Based on that they went to trial.

When asked how he felt about the plea agreement at the evidentiary hearing, petitioner cried on the witness stand. When asked about the plea agreement, if he would have done something different, petitioner said that he would have, with the knowledge that if he went to trial he was exposed to a whole life in jail. He did not have the knowledge.

Attorney Palomares Starbuck said it was a good case, a wonderful case. Petitioner would tell that to his family. During trial, things were going well. Suddenly, after a week into trial, halfway through, things started to change.

In relation to the plea agreement that was rejected, petitioner stated that attorney Palomares Starbuck never advised him, never gave him good advice so that he would have a good sentence, and never sat down to discuss it with him.

On cross-examination, petitioner was shown a copy of the visitor's log which reflects twelve visits to petitioner from Mr. Palomares Starbuck in 2005 and one visit in early 2006. Exhibit A.[8]

Petitioner admitted that a plea offer was made and was discussed with court-appointed attorney Bruce McGiverin with whom he had met at the prison at the beginning of his time at MDC after he was arrested on June 1, 2004. See Criminal No. 04–052, Docket No. 120. Attorney McGiverin represented him two or three months. That could have been all of 2004 and part of 2005. Petitioner testified that he could not understand him every time he would come to see petitioner in 2005 so the money was put together by petitioner's family to hire an attorney. A fellow in-

he could not receive a 12½ year offer, "That was (is) not going top happen."

8. The visits are relatively brief ranging from two hours on February 15, 2005 to 24 minutes on January 16, 2006. Exhibit A.

mate at the same ward told petitioner about attorney Palomares Starbuck. The inmate told petitioner that the attorney was good and that he had helped the inmate a lot.

Attorney Palomares Starbuck came to visit. Petitioner did not hire him because of his experience, but because he went through everything and saw something good in the case. Otherwise he would not have hired him. The attorney checked everything, the evidence in the case, before petitioner hired him. So petitioner got rid of attorney McGiverin because of the Spanish he spoke, and because petitioner was not sure the attorney understood him. But petitioner did understand the charges and the maximum penalties which attorney McGiverin explained to petitioner although petitioner explained about the co-defendant who had received a 12 1/2 year offer. At that point attorney McGiverin said to go ahead and sign the plea agreement for fifteen years since he faced 7 years and 25 years and conspiracy for 10 years on the charges. Attorney McGiverin explained the offer and the maximum penalty but said he would see if he could get something better. So the 15 year offer was explained to petitioner by attorney McGiverin, and petitioner decided that he was not going to take that plea agreement of 15½ years. Petitioner asked attorney McGiverin why he was not getting the same offer of 12½ years as a co-defendant. Attorney McGiverin's focus was to get a better offer and for petitioner to cooperate with the United States Attorney's Office. Petitioner rejected cooperation.

Petitioner discussed the fifteen year offer which was explained by attorney Mc-

Giverin, and declined it. He asked attorney McGiverin to get him 12 years, that fifteen years was too much. As a kid, he felt at that time that it was too much. The exposure should not have been the result. Petitioner knew the sentence exposure before going to trial because attorney McGiverin explained it to him, based on how he was charged. Now with the knowledge that petitioner has, that should have been the result. Petitioner was aware of the evidence of the drugs and the weapon and that was discussed with him by attorney McGiverin. Attorney Palomares Starbuck discussed the video and the video shows petitioner with a weapon. Attorney Palomares Starbuck was hoping that the jurors would not recognize him, although the lawyer knew that it was petitioner. Petitioner told him it was the wrong thing to do and that he knew that he was guilty. Both attorneys advised him to accept 15 years or he would be exposing himself to many more years if he went to trial.

Petitioner rejected the 15 years discussed with attorney McGiverin and rejected the renewed offer of 15 years presented by attorney Palomares Starbuck. He wanted 12 1/2 years that was offered to a co-defendant. He knew he was facing trial by rejecting the 15 year offer.

Petitioner insisted that attorney Lorenzo Palomares visited him three or four times. When confronted with the visitor log, petitioner stated that it was possible that he visited with petitioner twelve times and also three days before the trial.[9]

Petitioner repeated that he was not well informed of the charges, and did not know his exposure. He did not remember ever being told the maximum exposure.[10] At-

---

**9.** There were 12 visits in 2005 and one in January 2006 when trial commenced.

**10.** The cross-examination of petitioner included a bombardment of questions focused on

whether petitioner had been informed of the maximum penalty he faced by counsel McGiverin. Petitioner skirted answering the questions directly until the end of the cross-

torney McGiverin said the exposure was 40 to 45 years on the plea and exposure was not explained by attorney Palomares Starbuck. In the dozen visits, the first 6 or 7 visits were about the money, the other visits were about preparing for trial. The evidence was discussed but the defense was based on the lie that the attorney told him that he had a good case.

Petitioner never told either of the defense attorneys to stop negotiating. He did not tell attorney McGiverin to reject the plea offer but told him to keep negotiating to get something better. He told attorney Palomares Starbuck to get him something better. Referring to the visitor's log, Exhibit A, he noted a visit at MDC on July 20, 2005, and the next visit on October 6, 2005. The change of plea motion was filed on October 4, 2005. (Criminal No. 04–052, Docket No. 370). The motion was not authorized by petitioner. Between October 6 and November 29 2005, there was no conversation with attorney Palomares Starbuck regarding a change of plea hearing. Petitioner never had notice from either attorney that the 15 years was the last offer. Attorney Palomares Starbuck said to take the offer or go to trial. This was the only time he made an offer.

### B. PLEA REJECTION ANALYSIS

██ "[T]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case...." *United States v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998) (quoting *Boria v. Keane,* 99 F.3d at 496–97), cited in *Malpica–Garcia v. United States,* 2009 WL 2512425 at *3 (D.P.R. 2009). Knowledge of sentencing exposures is crucial to the decision of whether

to plead guilty. *See United States v. Day,* 969 F.2d 39, 43 (3rd Cir.1992), cited in *Malpica–Garcia v. United States, supra; Malpica–Garcia v. United States,* 2009 WL 1473906 at *3 (D.P.R.2009).

The government notes that on November 29, 2005, the case was called for change of plea. At that time, counsel Palomares–Starbuck informed that his client had decided to proceed to trial, against counsel's advice (Crim. No. 04052, Docket No. 376). Petitioner wanted to negotiate a lower sentence, talk with his family, pray to God for guidance, and think it over. However, contrary to his protestations, counsel informed petitioner to accept the plea. The plea offer was rejected, notwithstanding counsel's advice to the contrary.

The docket of the case paints a broader picture than the short canvas presented by petitioner for the court's consideration. Defense counsel had been preparing for trial as is apparent in the docket. (Criminal No. 04–0052, Docket Nos. 284, 289, 327, 334, 338, 378 (designating firearms expert), 382 (announcing alibi defense), 383 (notice of reciprocal discovery)). Aside from his traveling, and thus being unavailable to petitioner, the isolation in petitioner's confinement proved to be a recurring theme before the court, particularly with the difficulty it presented in his preparing for trial and having access to family members who apparently would be witnesses. (Crim. No. 04052, Docket Nos. 284, 289, 300, 305, 357). This became a tangential theme of motion practice due to the infractions (for example having possession of a cellular telephone at MD) committed by petitioner at MDC and the loss of privileges, such as social visits from his mother and fiancee.

examination. A review of the tape recording confirms my conclusion subject to court review. In any event, it is unreasonable and unbelievable to think that counsel McGiverin

would discuss the minutiae of exposure per count, as petitioner concedes, without reaching the minimums and maximums.

A jury selection was set for August 9, 2005, but the jury was excused because of another defendant's failure to be ready. (Crim. No. 04–052, Docket No. 338). On September 30, 2005, the court reset the trial for October 5, 2005. Petitioner (through his attorney) moved for change of plea on October 4, 2005. (Crim. No. 04–052, Docket No. 370). It is hardly credible that defense counsel would file a motion for change of plea without first having spoken to petitioner as to whether he was ready to then enter a guilty plea with or without agreement, and without knowing the exposure, at least in relation to the guilty plea. However, given the nature of the evidence related to attorney Palomares Starbuck's absence from the jurisdiction, and the nature of conversations between them, it is clear that the filing of the motion was not preceded by an authorization to file such a motion. A reading of the bare bones motion confirms that. Petitioner's testimony in terms of counsel's abrupt approach prior to entering the courtroom is credible particularly since other information in the docket confirms the absence of counsel and lack of communication.

The October trial setting was vacated and the plea hearing was reset for November 29, 2005. When the case was called for change of plea, defense counsel addressed the court in the presence of petitioner and informed that, contrary to counsel's advice, petitioner had decided to proceed to trial. (Criminal No. 04–052, Docket No. 376).

As to sentencing exposure, it strains credulity that petitioner was not aware of sentence exposure since the magistrate judges of this district routinely inform defendants at initial appearances of their imprisonment exposure per count and petitioner apparently kept himself informed about the progress of the other co-defen-

dants' cases. See *Aguasvivas–Castillo v. U.S.*, 49 F.Supp.3d 167 (D.P.R.2014), citing *Catalan–Roman v. United States*, 2013 WL 6229385 at *7 (D.P.R. December 2, 2013), Even assuming an inaccurate prediction, such a prediction of a client's probable sentence by itself does not satisfy the prejudice prong of the ineffective assistance test. *Moreno–Espada v. U.S.*, 666 F.3d 60, 65 (1st Cir.2012); *See United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir.1995), rev. on other grounds, 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997), citing *Knight v. United States*, 37 F.3d at 774. Petitioner wanted twelve years plus, the same agreement arguably given to a codefendant who was also described as a leader in the drug enterprise, as against fifteen plus. He was aware of that offer when he first received the government's offer. He wanted to talk the plea offer with his family. This might have been difficult in any event since his visitor privileges had been curtailed due to his own infractions. He wanted more time to think things over. And he wanted more time to pray to God. And as the prosecution notes, he wanted time to pray for guidance. (Docket No. 2–2 at 6). He notes that his first attorney told him he would get 40–47 years if found guilty after trial, but that he would have accepted the fifteen years if he knew the exposure was life imprisonment. That is, he would have taken "an unjust plea, but one that is logical rather than receive a life sentence." (Docket No. 2–2 at 5). This is not a case where the exposure is increased beyond the statutory maximum due to enhancing sentencing factors. As the charged conspirators go, petitioner was THE leader of the criminal enterprise. (Criminal No. 04–0052, Docket No. 60 at 5). It was natural that the government would seek the highest sentence for him, as indeed it did. The argument sounds more of convenience than of substance and a carefully tailored

focus on a sudden offer which had been on the table with sufficient time to meditate and to discuss with the family. In short, the argument lacks merit due to the conclusive nature of being contradicted by the record, but also because the paramount question in any detainee's mind is his exposure, since the conviction rate in this court is *vox populi* and 97% of federal cases nationwide are disposed of by guilty plea. Attorney McGiverin was appointed to represent petitioner on June 7, 2004 and stopped representing petitioner by January, 2005. At least by September 3, 2004, petitioner had already received a plea offer from the government. The uncontroverted evidence of government offers is that the offers remained the same from beginning to end and continued from one attorney to the other. And both attorneys had transmitted those offers to petitioner. *See United States v. Rodriguez Rodriguez,* 929 F.2d 747, 752 (1st Cir.1991); *cf. Aguasvivas–Castillo v. U.S.,* supra.

Notwithstanding petitioner's registered shock in October, 2005, he had had months to consult his family (mother and fiancee) about the original plea offer which had not changed. Perhaps being placed in isolation at MDC for extended periods had an effect on family visits. Nevertheless, that he was rushed into making a decision in the plea matter he raised so strongly in his original pleading and at the hearing is not credible. He simply wanted less and felt he had a chance at acquittal after reviewing the evidence with his last attorney, and based in part on lack of identification. Indeed in the preparation of the Presentence Investigation Report, after conviction, petitioner informed the United States Probation Officer that he was innocent, which is a position consistent with proceeding to trial.

Petitioner filed a supplemental memorandum after the hearing. Docket No. 38. He focuses on the second prong of the cause-prejudice test. I agree with the argument that petitioner received ineffective assistance of counsel from attorney Palomares–Starbuck. Petitioner points out that there was never any meaningful discussion in relation to a plea agreement between attorney Palomares–Starbuck and himself and the record plainly reflects that the focus of counsel was preparation for trial with an episode of presenting to petitioner the same plea agreement presented and obviously discussed with attorney McGiverin. Petitioner notes that instead of a twelve year sentence he received a life sentence. But the constant offer of the government was always fifteen years and petitioner chose to go to trial and attempt an acquittal, based in part on a misidentification in a video, after numerous video recordings were subject of a mostly successful motion in limine by counsel McGiverin. (Criminal No. 04–052, Docket Nos. 160, 205). Even with the prediction of a possible 45 to 47 years if convicted on multiple counts, petitioner chose to proceed to trial based in part on attorney Palomares Starbuck's advice, although the lawyer also advised him that he should not go to trial. That he had time for spiritual reflection and to consult with his family is clear from the months involved before the first plea offer and the last offer, and the number and quality of pro se motions filed by petitioner in the criminal case and in this case contradicts the argument presented in his pleadings prior to the April 1, 2015 filing.

I emphasize that my finding is that his second attorney, Palomares Starbuck, provided ineffective assistance to petitioner but that, notwithstanding an arguable language barrier with his first attorney, he was clearly provided adequate assistance during that representation sufficient to make intelligent choices.

Notably, petitioner argues that he registered shock at suddenly receiving a plea

offer of 15½ year in federal prison when he was preparing for trial. He stresses that he was to make a decision in a matter of minutes but the truth is the decision had been being made over a number of months, and that decision was to get a better deal or go to trial because· of a possible misidentification which was discussed with attorney Palomares Starbuck. Indeed, the questioning of the identification was clearly a strategy of both petitioner and his attorney(s), starting from denying that he appeared in four photos presented by the prosecution at the detention hearing held on June 7, 2004. (Criminal No. 04–052, Docket No. 104). But ultimately, petitioner wanted more than he could have. He was candid in his original pleading, that is, that if he would have had a few more days to consider the government's offer, he would have accepted it and the result would have been different. (Docket No. 2 at 4). He had had that offer not for moments, hours or days but for at least three months into the representation by attorney McGiverin, and four months before he was represented by attorney Palomares Starbuck. The argument that petitioner had no time to consider the plea offer is illusory and convenient and does not invite extraordinary relief on the issue.

Petitioner makes excessive mention of figures of the Holy Trinity in his various pleadings. The evidence at trial showed that during the six years of the criminal enterprise located at Nuestra Senora de Covadonga public housing project in Trujillo Alto, petitioner held different positions but that between April 2003 and the end of May 2004, he and Alex Trujillo were the leaders of the Covadonga cocaine and heroin drug point (becoming leaders after the previous leaders had been murdered) and that they also used weapons to carry out the purpose of the criminal enterprise. *United States v. Rodriguez,* 525 F.3d at 93,

102. Notwithstanding the urging of petitioner, the reliance on the Trinity must simply be ignored in this rendition to Caesar.

## SECOND GROUND:

### ALIBI DEFENSE

Petitioner argues that an alibi defense was announced but was not produced at trial and that he was thus prejudiced. (Docket No. 2 at 6). This argument is totally undeveloped and leaves the reader speculating as to where lies the prejudice. That counsel would announce the alibi defense on opening statement and abandon it at trial does not make him ineffective. See *Encarnacion–Montero v. United States,* 34 F.Supp.3d 202, 205–06 (D.P.R.2014); cf. *Ramirez–Burgos v. United States,* 990 F.Supp.2d at 126. As evidence develops, so does trial strategy.· See e.g. *Hammonds v. Allen,* 849 F.Supp.2d 1262, 1308–09 (M.D.Ala.2012); cf. *DiMattina v. United States,* 949 F.Supp.2d 387, 395–98 (E.D.N.Y.2013). A lawyer's decision to make changes in such strategy does not result in a Sixth Amendment violation. See e.g. *Garcia–Alvarez v. United States,* 2010 WL 5185468 at *4–*5 (D.P.R. December 13, 2010). In any event, it is a settled rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Nikijuluw v. Gonzales,* 427 F.3d 115, 120 n. 3 (1st Cir.2005); *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990). So it goes with this argument. Considering the nature of the evidence which developed during the trial, the decision to abandon the alibi defense was not unwise, particular since jurors are not expected to believe what nobody else would.

## THIRD GROUND:

### IDENTIFICATION DEFENSE

Petitioner complains of defense counsel's performance on closing argument in not

reinforcing his opening statement regarding petitioner's identification. And he complains that defense counsel focused the defense on the issue of the videos and his identification. (Docket No. 2 at 7). It is difficult to attribute error on the part of defense counsel to what may be considered garden-variety gear-shifting during the normal trial process. What may have seems a good idea before trial and at the beginning of trial may have changed during trial. See *Schlesinger v. U.S.*, 898 F.Supp.2d 489, 507–08 (E.D.N.Y.2012); cf. *Brown v. U.S.*, 583 F.Supp.2d 1330, 1350 (S.D.Ga.2008). There were two key witnesses against petitioner at trial, one a cooperating coconspirator and the other a government informant who was installed in an apartment with a preferential view of drug deals in Covadonga. *United States v. Rodriguez*, 525 F.3d at 93. Credibility was a factor for the jury to determine. So was identification in the video recording that were not eliminated prior to trial by the court. Petitioner argues that an expert should have been employed to testify that he is not the person in the video. And he also notes that family members were ready to testify that he is not in the video. The result of such testimony is clearly speculative and no mention of what the result of the testimony would be after cross-examination. That the defense was not successful does not mean that it was not viable. In any event, as in the immediately previous argument, this argument is undeveloped. *Nikijuluw v. Gonzales*, 427 F.3d at 120 n. 3; *United States v. Zannino*, 895 F.2d at 17.

## FOURTH GROUND:

### FAILURE TO DILIGENTLY PREPARE

This argument is fairly conclusory and vague and is contradicted by the activity in the docket as well as the dynamics of the trial itself. See e.g. Criminal No. 04–052, Docket Nos. 284, 289, 310, 327, 335, 378, 383. Petitioner appears to have been well informed of the details of the accusation while he was awaiting trial. See Criminal No. 04–052, Docket Nos. 223, 235, 305. Petitioner picks out episodes that simply do not present an adequate picture of counsel's performance save for the lengthy period prior to trial when counsel was out of Puerto Rico and failed to contact petitioner because he had too many fish to fry. That translations may or may not have been ready is not a reflection of diligence. (Docket No. 2–1 at 7). It is not at all clear if that is the case here. Last minute translations may not be the rule of the court but is not uncommon considering the expense and the few cases that actually proceed to trial. This was not defense counsel's first trial. He had considerable trial experience as a defense attorney in this court, having appeared in over 200 cases, civil and criminal, until he voluntarily resigned his membership in the bar on July 7, 2014, giving as reason his moving to the continental United States. Even assuming a translation may not have been ready at a certain time, no prejudice resulted.

## FIFTH GROUND:

### FAILURE TO OBJECT TO COURT COMMUNICATION TO A JUROR IN A CRUCIAL SITUATION

 Judges routinely have issues with jurors that have nothing to do with the issues of the case but rather with personal problems related to their ability to serve. Nevertheless, ex parte communications between judge and jury may raise concerns under Federal Rule of

Criminal Procedure 43(a) and the Fifth and Sixth Amendments. *United States v. Rivera–Rodriguez,* 617 F.3d 581, 603 (1st Cir.2010), citing *Presley v. Georgia,* 558 U.S. 209, 213–14, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010); *United States v. Gagnon,* 470 U.S. 522, 528, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). The mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. *See Rushen v. Spain,* 464 U.S. 114, 125–26, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *Mahoney v. Vondergritt,* 938 F.2d 1490, 1491 (1st Cir.1991). There is no Sixth Amendment violation when defense counsel is not engaged in the decision-making process of the trial judge in relation to an juror with a personal hardship. *See Olszewski v. Spencer,* 466 F.3d 47, 64–65 (1st Cir.2006); *cf. United States v. Espinal–Almeida,* 699 F.3d 588, 600–01 (1st Cir.2012). The particular juror in this case was ill. (Civil No. 2–1 at 10; Criminal No. 04–052, Docket No. 425, minutes dated February 13, 2006). Under the circumstances described here, it is apparent that there was no attempt of any type to influence the vote of the juror in question but rather to assure that the juror was not suffering a hardship which would have a detrimental effect on the juror's ability to participate in the fact-finding process. *Cf. Remmer v. United States,* 347 U.S. 227, 229–30, 74 S.Ct. 450, 98 L.Ed. 654 (1954).

### SIXTH GROUND

### FAILURE TO ARGUE IDENTIFICATION DEFENSE IN CLOSING ARGUMENT

This argument is discussed in the Third Ground. But it bears noting that even at the detention hearing, there was no concession that the pictures shown there were of petitioner. And later petitioner was told by Palomares Starbuck that the person in the videos did not look like him, and he agreed although he knew it was he.

### SEVENTH GROUND:

### FAILURE TO REVIEW DISCOVERY

This issue is discussed in the Fourth Ground and the same conclusion follows. The matter is at best conclusory and contradicted, apparently result-driven. Reference is made to one incident. The episodic nature of the omission and the court's comment rest importance to the issue. For example, counsel's failure to object to the introduction of a small amount of narcotics is given weight in an enterprise where petitioner is attributed more than 150 kilograms of cocaine. As trial strategy, failure to object may seem as sound as objecting, depending on the focus of the defense.

### EIGHTH GROUND:

### FAILURE TO SUBJECT PROSECUTION TO MEANINGFUL ADVERSARIAL TESTING

This argument is well coined but sufficiently imprecise to avoid meaningful analysis. Petitioner argues on numerous occasions that counsel did not object to damning testimony and admission of evidence and that even the district judge commented on the lack of his attentiveness. Issue was taken as to the lack of available translations, a not uncommon occurrence in trials in this district, sometimes due to error or sometimes due to the last minute rush to translate because plea bargaining has broken down on the threshold of trial. Again, because the great majority of cases resulted in guilty pleas, the matter of late translations is a recurring theme. In any event, these objections and rulings were already considered by the court of appeals and where

not considered were procedurally defaulted because they were not raised on appeal.

## NINTH AND TENTH GROUNDS:

## FAILURE TO OBJECT TO CERTAIN JURY INSTRUCTIONS RELATED TO CONTROLLED SUBSTANCES

Petitioner argues that defense counsel failed to object to certain jury instructions and that certain instructions misled the jury and were confusing. (Docket No. 2 at 15; 2–1 at 10). But the court corrected any erroneous instruction as reflected by the opinion of the court of appeals. The answer to this argument is invited by the challenges raised on appeal, and is two-fold. First the matter of jury instructions was raised on appeal and squarely decided. *See United States v. Rodriguez*, 525 F.3d at 105–06. In one part, the court mentioned that an alternative jury instruction can be submitted if one disagrees with the court's instruction. Thus the argument suffers the same fate as other issues raised and decided on appeal. Second, petitioner takes issue with appellate counsel's representation in not appealing the error in jury instructions. Those issues that were not raised on appeal but could have been raised suffer the natural consequences of procedural default. As is normally the case, appellate counsel selected the issues which she considered most important. The standard is not second-guessing counsel. Nor is it requiring counsel to appeal every non-frivolous issue, as I have stated previously.

■ Defendants have a right to effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Brown v. United States*, 42 F.Supp.2d 122, 127 (D.P.R.1998). Appellate counsel is not required to raise every non-frivolous claim, but rather select among them to maximize the likelihood of success on the merits. *Lattimore v. Dubois*, 311 F.3d 46, 57 (1st Cir.2002), citing *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Pinillos v. United States*, 990 F.Supp.2d 83, 104 (D.P.R.2013). A review of the lengthy appellate decision reveals the zealousness with which the appeal was conducted. It would be challenging for the court to determine that appellate counsel's representation failed the two-part test of *Strickland v. Washington, supra*. I cannot reach the conclusion that appellate counsel did not choose wisely in selecting which matters to challenge. *See United States v. Mangual–Corchado*, 139 F.3d 34, 42 n. 17 (1st Cir.1998), citing *United States v. Rivera–Santiago*, 872 F.2d 1073, 1088 (1st Cir.1989).

## ELEVENTH GROUND:

## FAILURE TO OBJECT TO AERIAL PHOTOGRAPH

Petitioner complains that his attorney failed to object to the use of an aerial photograph by the case agent when reflected the general area of the Covadonga housing project. Petitioner argues that the aerial photograph was not authenticated and thus counsel's performance was deficient in that respect. The argument is not even Monday morning quarterbacking. While the court of appeals considered other errors to be serious enough for discussion, that is not the case with this photograph. Trial counsel are not expected to object to every piece of evidence presented by the prosecution and it is difficult to conclude that the admission of the photograph was unfairly prejudicial to the defendant or prejudicial at all, considering the descriptive manner it was used during the testimony.

## TWELFTH GROUND:

### FAILURE TO OBJECT TO EVIDENCE OF DRUG TRAFFICKING AREAS

While it might have been better to object to the admission of such overview testimony, it is not a Sixth Amendment violation not to, under the circumstances, since no substantive rights were affected by the testimony. Furthermore, this matter was considered by the court of appeals although not in a Sixth Amendment context. The court cautioned the government during the trial about the use of such evidence. *United States v. Rodriguez*, 525 F.3d at 95. In any event, the evidence was considered harmless in view of the ample evidence of the leadership role of petitioner. *Id.* at 96–97.

## THIRTEENTH GROUND:

### FAILURE TO OBJECT TO OVERVIEW TESTIMONY

Petitioner charges counsel with failing to object to overview testimony and evidence introduced by the government related to drug trafficking areas. (Docket No. 2–1 at 12). Whether or not allowing such evidence constituted error was considered by the court of appeals which determined that it was error to allow such hearsay. Nevertheless, while the court noted that overview statements constituted "improper hearsay testimony", the court decided that the statements did not have an effect on the outcome of the trial, after a panoramic view of the ample evidence of petitioner's leadership role in the drug enterprise, which included petitioner's carrying a weapon and engaging in drug transactions. *United States v. Rodriguez*, 525 F.3d at 96–97. In any event, the matter was considered by the court of appeals which determined that the admission of the hearsay testimony did not result in plain error.

## FOURTEENTH GROUND:

### BIASED GRAND JURY AND PROSECUTORIAL MISCONDUCT

Petitioner claims that inflammatory and false testimony was presented to the grand jury by the prosecution. The prosecution is charged with allowing perjured testimony about petitioner's involvement in a murder, and presenting evidence in such an inflammatory fashion that the attitude of the grand jury was slanted toward indictment based upon exaggeration related to violence and danger created by petitioner and others supposedly associated with him. Thus petitioner argues that the indictment should have been quashed upon motion of defense counsel which was never filed. (Docket No. 2–1 at 12).

The government tersely replies to this argument stating that the conviction moots the argument and that case law does not support collaterally attacking the conviction based upon grand jury irregularities. *See Goodrich v. Hall*, 448 F.3d 45, 49 (1st Cir.2006).

 Petitioner raises the issues of bias and prosecutorial misconduct in an effective assistance of counsel light. In order to warrant dismissal of the indictment for errors in the grand jury proceedings, including the supposed inflammatory testimony, the court must find that "the errors were prejudicial to the defendant[ ] such that they influenced the grand jury's decision to indict." *United States v. López*, 854 F.Supp. 41, 46 (D.P.R.1994) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988)); *see United States v. Muñoz Franco*, 123 F.Supp.2d 45, 52 (D.P.R.2000) (quoting *United States v. Mechanik*, 475 U.S. 66, 78, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)); *see also United States v. Malavet*

*Rodriguez,* 738 F.2d 13, 16 (1st Cir.1984), *cited in United States v. Rivera Feliciano,* 183 F.Supp.2d 484, 485 (D.P.R.2002) ("A showing of actual prejudice to the accused is required."). Of course, if no motion to dismiss is filed, then the court would not ordinarily undertake the inquiry as to errors in the grand jury testimony. But a review of the testimony does not reveal either perjury or inflammatory statements to goad the grand jurors into indicting petitioner, statements without which petitioner would arguably not have been indicted. It is difficult to ignore the axiom that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence...." *United States v. Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (citing *Costello v. United States,* 350 U.S. 359, 36[3], 76 S.Ct. 406, 100 L.Ed. 397 (1956)); *United States v. Gómez–Vega,* 519 F.Supp.2d 241, 266 (D.P.R.2007); *United States v. Muñoz Franco,* 123 F.Supp.2d at 53; *cf. United States v. Maceo,* 873 F.2d 1 (1st Cir.1989). A defense attorney reviewing the transcript of this grand jury testimony would not be denying a defendant adequate assistance of counsel by failing to move to dismiss the indictment. The well focused *post haec* argument of petitioner is possibly more inflammatory than the testimony alluded to, especially if one considers that grand jurors in Puerto Rico are not known to leave their common sense at the courthouse door when they enter the grand jury deliberating room.

## FIFTEENTH GROUND:

### JUROR BIAS

Petitioner argues that his trial counsel failed to tell him and the court that one of the jurors knew him. This matter, should it be considered as one, was raised neither at trial, nor at sentencing nor on appeal.

In the strictest sense, it therefore suffers from double procedural default. Curiously, petitioner makes reference to a relationship of trust between his own mother and defense counsel Palomares Starbuck. In any event, the argument is nothing more than conclusory, aside from being procedurally defaulted.

## SIXTEENTH AND SEVENTEENTH GROUNDS:

### FAILURE TO OBJECT TO JAIL PHOTO, JAILHOUSE NOTE

Petitioner engages in a gestalt-like analysis of the effect of the introduction of a jail photo and jailhouse note without objection by counsel. He attributes to the photo to the conclusion that the jury would decide that he was in prison, convicted of a separate offense. Trial counsel used the photograph to his benefit on cross-examination. And a "jail photo" does not invite a forced conclusion that the subject has been convicted and is doing time for a separate sentence. The photograph is an example of another strategic choice of trial counsel. In any event, this issue could have been raised on appeal and was not. It suffers procedural default and such procedural default does not reflect on trial or appellate counsel's advocacy.

Petitioner also attributes error to the introduction of a jailhouse note. But this note was the source of battle down to the rebuttal argument of the government. Again, its use is an example of trial strategy, not inertia or ennui.

## EIGHTEENTH GROUND:

### COURT'S REMOVING BIBLE FROM HIM IN COURTROOM

Petitioner complains that his Bible was taken away from him, a Bible he had been reading to himself during trial. He never

saw the Bible again. (Docket No. 2–1 at 14–20). That he had no Bible to read from caused him great anxiety and depression because he could not practice his religion by reading the Bible. He also notes that the Bible would give him direction, wisdom and guidance as to what to do during the trial. He relied on the word of God in the Bible for his trial. (Docket No. 2–2 at 5). He notes that the trial was based upon lies and false testimonies.

■ "[R]easonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First ... Amendment[ ] without fear of penalty." *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Petitioner complains that the court showed its bias before the jury when it ordered his Bible removed after he had been reading it to himself, and that his attorney failed to object to the removal beyond explaining to the court that he was reading it peacefully. Petitioner notes that the court should have given an instruction to the jury as to why the Bible was removed. The government notes that it was petitioner's intention to testify and be able to read appropriate texts from the Bible to the jury. Indeed, petitioner wanted counsel to read an appropriate passage from the Bible to the jury on closing argument. Docket No. 2–2 at 6. In any event, in the context of the judge's ruling, there is no showing of bias, neither actual nor apparent. The court noted the distracting and confusing effect the Bible would have upon the jury. See e.g. *United States v. Rodriguez,* 675 F.3d 48, 59–61 (1st Cir.2012) (Bible in jury deliberation room). Both parties have a right to a fair trial free from outside influences. An instruction would have drawn more unnecessary attention to the matter. And the court's motive was not to violate a First Amendment freedom but rather to engage in the traditional balances of trial and attempting to maintain a fair, impartial and unbiased jury capable of rendering a verdict solely on the evidence. In any event, counsel's performance was not prejudicially deficient in not objecting to the removal and the entire matter has been procedurally defaulted since it was not raised on appeal.

### NINETEENTH GROUND:

### COUNSEL FAILING TO OBJECT TO JUROR AND CASE AGENT TALKING DURING TRIAL

■ Even a cursory viewing of this issue raises the specter of prejudice. In this particular case, the matter of some type of communication between a juror and the case agent only leaves grounds for total speculation, both in the content of the conversation, the length of the exchange and any context aside from the visual depiction. "Any unauthorized communication between jurors and persons associated with the case is presumptively prejudicial" and obligates the court to "conduct a sufficient inquiry to determine whether the communication was harmless." *United States v. O'Brien,* 972 F.2d 12, 14 (1st Cir.1992), quoted in *United States v. Gaston–Brito,* 64 F.3d 11, 13 (1st Cir.1995). However, it is clear the court knew nothing of this communication at or near the time that it happened, and that the matter was not raised below nor preserved on appeal. The communication is not described although observed. Indeed the court was made aware of the possible irregularity at the time of sentence. (Docket No. 2—at 20–21). The matter was not carried forward on appeal. Therefore, it is procedurally defaulted. *See Stewart v. LaGrand,* 526 U.S. 115, 120, 119 S.Ct. 1018, 143 L.Ed.2d 196 (1999). In any event, the presumption of prejudice applies "only where there is an egregious tampering or third party communication which

directly injects itself into the jury process." *United States v. Boylan*, 898 F.2d 230, 261 (1st Cir.1990), cited in *United States v. Bravo–Fernandez*, 792 F.Supp.2d 190, 194 (1st Cir.2011). The communication is lightly described, an unlikely scenario where an individual juror even sees a prisoner in custody who is always brought in and taken out of court in shackles and always outside the view of jurors.

## TWENTIETH GROUND:

## FAILURE TO OBJECT TO OR APPEAL WEAPONS INSTRUCTION

Petitioner complains that the district court took away an element of one of the crimes. (Docket No. 2 at 32). As in other instructions challenged in this motion, it is challenging to find error if alternate instructions are not submitted by defense counsel for the jury's consideration. The short answer to petitioner's argument is that the district court immediately corrected the error and the entire matter was laid to rest by the court of appeals. *United States v. Rodriguez*, 525 F.3d at 105–06. Indeed, the court repeated the correct version of the instruction to make sure the correction was clear to the jury.

## TWENTY–FIRST GROUND:

## FAILURE TO PRESERVE ALL OBJECTIONS

The court of appeals clearly set out the standard under which it would consider the numerous evidentiary issues raised on appeal. Some were not preserved due to lack of objection. *United States v. Rodriguez*, 525 F.3d at 95. The court in its ruling considered many allegations of plain error by appellate counsel, but the court noted that petitioner could not "surmount the high hurdle of plain error review..." *Id.* at 96. Petitioner raises numerous points where counsel failed to preserve objections, indeed all objections. But an objection properly made is thus preserved, requiring a lesser standard on review. This becomes an invitation to revisit the entire trial process and pick matters which in hindsight would have been engaged by an ideal counsel, not by an attorney allowed a degree of leeway in rendering adequate assistance under the Sixth Amendment.

## TWENTY–SECOND GROUND:

## FAILURE TO OBJECT

Petitioner argues that there was no objection or request for mistrial related to damaging evidence, such as the death of Trompi. The court of appeals addressed the evidentiary rulings identified by petitioner and determined that they were not erroneous or, if erroneous, were harmless in light of ample evidence of guilt. *United States v. Rodriguez*, 525 F.3d at 101. Again, to review the argument would be to also review the court of appeals ruling. The claims now have been decided before on direct review. *See Murchu v. United States*, 926 F.2d 50, 55 (1st Cir.1991).

## TWENTY–THIRD GROUND:

## CONTRACTUAL AGREEMENT

Petitioner notes that the questioning of the key government witness Omar Medina Torres in relation to an agreement that he must testify truthfully was improper. Petitioner argues that defense counsel should have objected. (Docket No. 2 at 37–38). The argument is undeveloped and the questioning does not reach a level of bolstering which might of necessary require objection. The witness was candid in relating the nature of his own plea agreement and the questioning was limited. The argument was understandably not

raised on appeal and is thus procedurally defaulted.

### TWENTY–FOURTH GROUND:

### FAILURE TO OBJECT TO HIGHLY PREJUDICIAL EVIDENCE

Petitioner argues that it was ineffective for defense counsel to fail to object to the evidence related to not only the murder of Trompi, but the attempted shooting of Espada and the status of Alex Trujillo as a fugitive wanted by the Puerto Rico "Mass Murder Office". (Docket No. 2 at 40). This argument must be placed in the context that the evidence that a drug point existed in Covadonga was overwhelming. See *United States v. Rodriguez*, 525 F.3d at 101. Furthermore, Espada testified in relation to co-conspirator statements that pointed to petitioner. The testimony related to Trujillo helped place the criminal enterprise in context and was relatively brief. How far objections would be fruitful is at best questionable and not a reflection of incompetence under the Sixth Amendment.

### TWENTY–FIFTH GROUND:

### FAILURE TO OBJECT BLAKELY AND FANFAN [11] VIOLATIONS BY THE COURT AT SENTENCING

In *Blakely*, the Supreme Court applied the rule established in *Apprendi* and concluded that defendant's sentence was in direct violation of his Sixth Amendment rights. The Court reiterated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt." *Blakely v. Washington*, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The Court further clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington*, 542 U.S. at 303, 124 S.Ct. 2531 (citing *Ring v. Arizona*, [12] 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)) (emphasis in original); *United States v. Rivera–Calderón*, 354 F.Supp.2d 86, 90 (D.P.R.2005). The Court noted that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely v. Washington*, 542 U.S. at 303–04, 124 S.Ct. 2531. See *Torres–Santiago v. U.S.*, 865 F.Supp.2d 168, 187 (D.P.R.2012). In applying this rule to the case before them, the Supreme Court determined that the trial judge there had exceeded his authority when he imposed a sentence relying on facts that were not accepted by the defendant. *Blakely v. Washington*, 542 U.S. at 311, 124 S.Ct. 2531.

In this case, the court of appeals determined that the record provided support for the drug quantity determination, 150 kilograms of cocaine, and the case was not remanded for re-sentencing on this issue. See *United States v. Rodriguez*, 525 F.3d at 107–09. The court went into an exhaustive analysis as to drug quantity and how the evidence sustained the manner in which it was determined. One finding was found to be erroneous but a recalculation of the evidence in relation to that issue

---

**11.** *United States v. Fanfan*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

**12.** In *Ring*, the Supreme Court decided that under the Sixth Amendment, a defendant had

the right to have certain sentencing factors proven beyond a reasonable doubt. *Ring v. Arizona*, 536 U.S. at 609, 122 S.Ct. 2428.

resulted in a sentence well within the bounds selected by the district court and the ultimate quantity of cocaine remained the same. The standard for review bears repeating.

A significant bar on habeas corpus relief is imposed when a prisoner did not raise claims at trial or on direct review. In such cases, a court may hear those claims for the first time on habeas corpus review only if the petitioner has "cause" for having procedurally defaulted his claims, and if the petitioner suffered "actual prejudice" from the error of which he complains.

 *United States v. Sampson*, 820 F.Supp.2d 202, 220 (D.Mass.2011), citing *Owens v. United States*, 483 F.3d at 56, also citing *Oakes v. United States*, 400 F.3d 92, 95 (1st Cir.2005) ("If a federal habeas petitioner challenges his conviction or sentence on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted.") To obtain collateral relief, petitioner must show cause excusing his procedural default and actual prejudice resulting from the errors he is complaining about. *See United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Ineffective assistance of counsel can clearly supply the cause element of the cause and prejudice standard. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), cited in *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir.2011). Yet, while petitioner has shown that defense counsel's representation was constitutionally ineffective under the *Strickland* standard, he has failed to prove that he was prejudiced by counsel's inferior representation. Indeed the communication of the offered plea agreement could not have been much more abrupt. Nevertheless, everyone else had also been made offers

and it is unlikely that petitioner, as a leader, was not aware of them.

## TWENTY–SIXTH GROUND:

### FAIR SENTENCING ACT

Petitioner originally claimed the right to reduction of sentence under the Fair Sentencing Act. (Docket No. 2 at 38). Thus he clamored for retroactive application of Sentencing Guidelines, and reduction of sentence pursuant to U.S.S.G. Sec. 1B1.10 as amended and 18 U.S.C. § 3582(c)(2). This request stands alone, and is not subject to a motion under 28 U.S.C. § 2255. In his reply, he demurred from the request reference to a separate motion that was filed. In any event, petitioner clearly does not qualify for sentence reduction since he was convicted of an offense involving powder cocaine and not crack cocaine and therefore does not qualify for sentence reduction. The matter is moot. (Criminal No. 04–0052, Docket No. 611).

## V. SUPPLEMENTAL MOTION: PLEA OFFER

Petition has filed a supplemental claim, relating back to the original 2255 motion. Fed.R.Civ.P. 15(c)(1) allows for amendment when "it relates back to the date of the original [petition]". *See Turner v. United States*, 699 F.3d at 587; *United States v. Ciampi*, 419 F.3d 20, 23–24 (1st Cir.2005). The relation back provision in habeas petitions is strictly construed. *Turner v. United States*, 699 F.3d at 587. Petitioner relies on *Lafler v. Cooper*, 566 U.S. ——, 132 S.Ct. 1376, 1385 to convince the court that he is entitled to relief since the Six Amendment right to counsel extends to the plea bargaining process. *Id.* at 1384. Petitioner argues that defense counsel must always timely communicate to the client the terms of any plea offer made and/or extended by the government, and in this case the failure to communicate

such an offer was aggravated by the absence of any advice concerning the plea bargain and the significant difference of sentence imposed upon conviction after going to trial.

It is clear that while petitioner claims of the short time he had to consider any plea offers, he was keenly aware that all of his underlings had entered guilty pleas by that time and he discussed the same with his attorney. *Lafler* would not be controlling in any event because in that case there was a lack of communication of a plea offer and in this case, there was not only a communication of the offer with trial counsel, but an analysis of the case, in hindsight a poor analysis But after the storm, anyone can be a boat captain. Petitioner was aware of the long-standing offer by the prosecution. Ineffective assistance of counsel might have been triggered if the plea offers were not communicated to petitioner but that did not happen. In *Missouri v. Frye*, 566 U.S. ——, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012), the Supreme Court held that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. If such a formal offer was not communicated to a defendant, and the offer thus lapsed, then "... defense counsel did not rendered the effective assistance that the Constitution requires." *Id.; see Lafler v. Cooper*, 566 U.S. ——, 132 S.Ct. 1376, 1390–91, 182 L.Ed.2d 398 (2012). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. *Missouri v. Frye*, 566 U.S. ——, 132 S.Ct. at 1409. The defendant must also demonstrate "...a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it ..." *Id.* To prove prejudice, in relation to a plea offer that was not accepted, petitioner must establish that there is a reasonable probability that, but for counsel's deficient advice, he would have pleaded guilty and would not have insisted on going to trial." *See Lafler v. Cooper*, 566 U.S. ——, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012). "A defense attorney in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996), cited in *United States v. Gonzalez–Vazquez*, 219 F.3d 37, 42 (1st Cir.2000) (defendant instructed attorney to accept plea offer; sentenced to 37½ years, consecutive with a 2–year local sentence). The decision to plea guilty must ultimately be left to a client's wishes. *Boria v. Keane*, 99 F.3d at 496–97. Both attorneys in this case let petitioner know that this was a good deal, especially attorney McGiverin.

Petitioner argues the following: that his attorney moved for change of plea on October 4, 2005 and never visited petitioner until November 29, 2005. Defense counsel was never in this district during that time and thus did not visit petitioner. He also argues that he was approached with the plea offer for the first time on November 29, 2005, and asked petitioner to either accept it or reject it, and never told petitioner that he was exposed to life if he did not take it, nor was he told of the consecutive sentence he faced if convicted of the weapons charges. Counsel stated that petitioner was exposed to only a 40–47 year sentence. Petitioner focuses on the deficient performance being the reason why he did not accept the plea.

The problem here is that there is no certainty that the court would have accepted the plea agreement, assuming that the government would not have withdrawn the offer. And petitioner originally argued that he was rushed and wanted to make a counteroffer of twelve and one-half years but that counsel said take it or leave it, that this was it. Petitioner stated that he would possibly take twelve years, but counsel told him that he could not get that, and that he had to make the decision now.

Petitioner argues that the matter was sprung on him abruptly but that statement is not credible because of what I have discussed above.

## VI. SUPPLEMENTAL MOTION:

### DETERMINATION OF DRUG QUANTITY

Petitioner specifically relies on a newly recognized right announced by the United States Supreme Court under 28 U.S.C. § 2255(f)(3). (Docket No. 11–1 at 3). The date of that announcement is June 17, 2013, the date *Alleyne v. United States,* 570 U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) was decided.

In overruling its own case law, *Harris v. United States,* 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Supreme Court held the following:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty of a crime. It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

*Alleyne v. United States,* 570 U.S. at ——, 133 S.Ct. at 2155.

■ Clearly, *Alleyne v. United States,* 570 U.S. ——, 133 S.Ct. 2151 reads like and is an extension of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as petitioner clearly notes, and did set forth a new rule of constitutional law. However, the rule does not apply retroactively to cases on collateral review. *See Butterworth v. United States,* 775 F.3d 459, 464–65 (1st Cir.2015); *Barrow v. United States,* 990 F.Supp.2d 76, 81 (D.P.R.2013); *Ortiz–Aponte v. United States,* 2014 WL 2604723 (D.P.R. Jun. 11, 2014) at *2. "*Alleyne,* [570 U.S. ——, 133 S.Ct. 2151] is not a new "watershed" decision but rather an extension of the Supreme Court's earlier decision in *Apprendi v. New Jersey,* 530 U.S. 466, [120 S.Ct. 2348], 147 L.Ed.2d 435 (2000)." *United States v. Popa,* 2013 WL 5771149 at *3 (D.Minn. October 24, 2013).

Counsel Palomares Starbuck objected to the presentence report, detailing not only the sentences of co-conspirators but emphasizing the amount of drugs attributed to petitioner by the jury through the verdict form. (Criminal No. 04–052, Docket No. 447). In any event, the jury finding supported the life sentence. See e.g. *United States v. Razo,* 782 F.3d 31, 39–40 (1st Cir.2015); *United States v. Alejandro–Montanez,* 778 F.3d 352, 360 (1st Cir. 2015).

■ In order to satisfy the "prejudice" prong of *Strickland,* petitioner must establish that "but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence." *Peralta v. United States,* 597 F.3d 74, 79–80 (1st Cir.2010), citing *Porter v. McCollum,* 558 U.S. 30, 40, 130 S.Ct. 447, 453, 175 L.Ed.2d 398 (2009). Appellate counsel also addressed the drug quantity issue on appeal. The appeal had favorable consequences as to some issues, although not as to this one. In any event, this invites the recollection that when a federal prisoner

raises a claim that has been decided on direct review, he ordinarily cannot attempt to relitigate the claim in a section 2255 motion. *Withrow v. Williams,* 507 U.S. 680, 720–21, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993); *Berthoff v. United States,* 308 F.3d 124, 127–28 (1st Cir.2002); *Argencourt v. United States,* 78 F.3d at 16 n. 1; *Singleton v. United States,* 26 F.3d 233, 240 (1st Cir.1994). Thus it is in this case.

## VII. CONCLUSION

Petitioner has established that his attorney Lorenzo Palomares Starbuck was deficient in that the quality of his legal representation fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. at 686–87, 104 S.Ct. 2052; *United States v. Downs–Moses,* 329 F.3d 253, 265 (1st Cir.2003). But even taking this as a given, petitioner must then establish that said deficiencies operated a prejudice against him in the criminal proceedings. To demonstrate such prejudice, petitioner must have shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See United States v. Rodriguez,* 675 F.3d 48, 56–57 (1st Cir.2012). The second prong of the *Strickland* standard was clearly not transgressed by counsels' performances. Finally, in relation to some of the matters raised, collateral review of issues or claims which were already presented to and addressed by the court of appeals is barred, since a section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir.1996) (quoting *Belford v. United States,* 975 F.2d 310, 313 (7th Cir.1992)). Much of petitioner's argument was addressed or could have been addressed on direct appeal. He cannot supplement his appeal by raising issues now that he could have raised then. The evidence at trial was substantial without the evidence admitted arguably as a result his attorney's poor performance. *United States v. Rodriguez,* 525 F.3d at 101.

Finally, "[u]nder *Strickland v. Washington,* ... counsel is not incompetent merely because he may not be perfect. In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent." *Arroyo v. United States,* 195 F.3d 54, 55 (1st Cir.1999). Petitioner has satisfied the first prong of *Strickland* as to the sparse communication between him and defense counsel Palomares Starbuck. Counsel's performance was less than incompetent. In view of all of the above, I find that petitioner has established that his trial counsel's representation fell below an objective standard of reasonableness as to the failure to communicate in part due to his absence from the jurisdiction. *See Lafler v. Cooper,* 132 S.Ct. at 1384; *Strickland v. Washington,* 466 U.S. at 686–87, 104 S.Ct. 2052; *Moreno–Espada v, United States,* 666 F.3d at 65; *United States v. Downs–Moses,* 329 F.3d 253, 265 (1st Cir.2003). Nevertheless, petitioner has failed to show that such deficiency resulted in a prejudice against him in the criminal proceedings. *See Owens v. United States,* 483 F.3d at 63 (quoting *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. 2052); *United States v. Campa,* 679 F.2d 1006, 1014 (1st Cir.1982), cited in *Moreno Morales v. United States,* 976 F.2d 724 (Table) (1st Cir.1992). Petitioner primarily wanted three less years than he was offered because he felt he was similarly situated as a fellow co-conspirator in a similar leadership role. (Docket No. 2–2 at 2). Ultimately, he believed he would be acquitted based in part on a lack of identification. After conviction he did not acknowledge

guilt even after seeing himself in the videos at trial. The first admission of guilt came during the February 2015 evidentiary hearing.

In relation to the performance of appellate counsel *qua* appellate counsel, petitioner has failed to show that counsel's representation fell below an objective standard of reasonableness. Indeed, the appeal found an easily measurable degree of success.

Accordingly, it is my recommendation that the Motion to Vacate, Set Aide or Correct Sentence filed on July 11, 2011 (Docket No. 1) be denied, and it is also my recommendation that the similar amended motion filed on July 18 (Docket No. 2) be denied.

 Based upon the above, I also recommend that no certificate of appealability be issued in the event that petitioner files a notice of appeal, because there is no substantial showing of the denial of a constitutional right within the meaning of Title 28 U.S.C. § 2253(c)(2). *Miller–El v. Cockrell,* 537 U.S. 322, 336–38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000); *Lassalle–Velazquez v. United States,* 948 F.Supp.2d 188, 193 (D.P.R.2013).

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Sch. Union No. 37 v. United Nat'l*

*Ins. Co.,* 617 F.3d 554, 564 (1st Cir.2010); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982).

At San Juan, Puerto Rico, this 6th day of May, 2015.